# G. D. Whitcomb Company, Appellant, *v.* Quemahoning Creek Coal Company.

*Contract—Sale—Gasoline motor—Defective part—Acceptance—Payment.*

A contract for the sale of a gasoline motor provided that if the motor failed to work up to certain capacities defined, the purchaser was not bound to take it. There was a guarantee that it should be free from defects in material and workmanship, and that any part found defective within one year from date of shipment of the motor would be replaced free of charge on the defective part being returned for inspection. The motor was installed and paid for after three months, and continued in use for two and a half years. During the first year a number of parts were replaced by the seller without any of the old parts being returned for inspection and the purchaser paid for them. Subsequently the seller furnished other parts at the request of the purchaser, and when these were not paid for suit was brought to recover them. The defendant set up a counterclaim alleging that the motor was defective and that his damages amounted to more than plaintiff's claim. *Held,* that the counterclaim could not be established unless it was shown that the motor did not perform its work, and that it was defective in construction or material, and that such inherent defects could not be supplied.

In such a case the defendant was not entitled to set up as an additional counterclaim the amounts which he had paid for defective parts, inasmuch as he had not complied with the conditions of the contract requiring him to return such parts to plaintiff for inspection.

Argued April 8, 1918. Appeal, No. 109, April T., 1918, by plaintiff, from judgment of C. P. Somerset Co., Dec. T., 1915, No. 196, on certificate for defendant in case of G. D. Whitcomb v. Quemahoning Creek Coal Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit for goods sold and delivered. Before RUPPEL, P. J.

The facts are stated in the opinion of the Superior Court.

Plaintiff presented, inter alia, the following points:

"2. Under the contract it was the duty of the defendant to return any parts found to be defective within one year from date of shipment, prepaid, to the G. D. Whitcomb Company, Rochelle, Ill., for inspection, if they wish to recover by way of set-off any amount for repairs furnished by the George D. Whitcomb Company."

"Answer: That point is refused. We have already said to you that would have been the duty of the defendant if these defects had appeared later on, after the motor had been started, but if as contended by the defendant, the defects were apparent at once and the plaintiff knew of these defects and these repairs were sent with a view of replacing the parts that were defective, there was no necessity of sending the other parts back and of the giving of the notice as required by the contract." (11)

"3. Under the terms of the agreement, plaintiff undertook to replace only such parts which were found to be defective within one year from date of shipment. The repair parts, the price of which is sought to be recovered in this suit, were purchased more than a year after the shipment of the motor, and therefore, the verdict must be for the plaintiff."

"Answer: That point is refused for the same reason as stated in answer to the previous point; that would be correct if there had been no complaint during the first year at all, but under the evidence of this case that point cannot be affirmed." (12)

"4. The plaintiff was not required to make allowance for repairs, unless the same were made with its written consent or approval. There is no evidence in the case to establish the fact that the motor, or any of its parts, were defective at the time the same were furnished or afterwards, other than that it took the machinist one week to get the motor in operation after the same had

been assembled, and that a number of the parts were frequently broken.  Therefore, defendant cannot recover damages by way of set-off."

"Answer: The fourth point of the plaintiff is refused without reading."  (13)

The court charged in part as follows:

[If these materials that are sued for here were simply to replace defective materials that were needed on the machinery by reason of the defect in the machine, then you simply eliminate that item and you would then award the defendant damages for such an amount as you think it has sustained.  For instance, suppose you would conclude that the machine was defective and that the damages amounted to $1,000, then you would simply return a verdict in favor of the defendant for .$1,000. But suppose you would say that these materials in this bill were not used to repair defective parts of the machine but were used in the ordinary wear and tear of the machine, then you would have to deduct that.  In other words, you would deduct the $1,000 from that and return a verdict for the plaintiff for the difference.  I think you will understand how this rule is applied to the damages.  You will find first, whether the machine was defective.  If it was not defective, then you will return a verdict for the plaintiff for the full amount of its claim.  If it was defective, then what damage did the defendant sustain, and then also were these materials in suit ordered for replacing or repairing defective parts.]

Certificate and judgment for defendant for $908.39. Plaintiff appealed.

*Errors assigned,* among others, were (10, 11, 12, 13) above instructions quoting them.

*Joseph Levy,* with him *W. Curtis Truxal* and *Fred W. Biesecker,* for appellant.—The burden was on the defendant to prove the defects in the machinery which existed at the time the motor was furnished; to prove that the

old parts were returned to the plaintiff, or else that plaintiff waived its right to have them returned; and to prove particularly in what respect the motor failed to perform its work: Himes v. Kiehl, 154 Pa. 190; Stutz Loyalhanna v. Coal & Coke Co., 131 Pa. 267.

*Norman T. Boose,* cited: Osborne & Co. v. Walley Bros., 8 Pa. Superior Ct. 193; Leggoe v. Mayer, 2 Pa. Superior Ct. 529; Shoe v. Maerky, 35 Pa. Superior Ct. 270; Jones & Laughlin Steel Co. v. Wood, 249 Pa. 423; Miller Lock Co. v. Diehl Mfg. Co., 37 Pa. Superior Ct. 585.

OPINION BY TREXLER, J., July 10, 1918:

By contract dated June 6, 1912, plaintiff engaged to furnish defendant one eight-ton gasoline motor. The contract contained the following: "We assume no liability for damages on account of delays, nor can we make allowance for repairs or alterations, unless same are made with our written consent or approval. We will replace or repair any material which is proved within a reasonable time to have been defective at the time we furnished it, but it is agreed that no liability shall attach to us on account of damages or delays caused by such defective material." The vendor was to send an experienced man to the mine who was to look after the starting of the motor. Then followed the proviso, "If the motor in the hands of our man does not develop above defined drawbar pull and practically above capacities when working under good conditions and on dry rail, you are to be under no obligations to purchase the motor and are to load same f. o. b. cars at your mines and we will remove same. On the other hand, if the motor in the hands of our man shall develop above defined drawbar pull and hauling capacities, you shall pay the balance due on the motor upon the completion of the ten days' period our man is to be at your mine. If the motor shall fail to work up to capacities above defined

we will refund amount paid." Further, "Motor is guaranteed to be free from defects in material and workmanship, and any part that may be found defective within one year from date of shipment will be replaced free of charge f. o. b. cars factory, but the old part is to be returned prepaid to the Geo. D. Whitcomb Company, Rochelle, Illinois, for inspection before credit is made. This guarantee, however, is not to cover any part or parts that may break or wear out through neglect or abuse." After some delay caused by damage in transit, the motor was started October 7, 1912, and continued in use until April, 1915. There were numerous new parts furnished by plaintiff up to December 23, 1914, amounting to $1,733.32, and defendant paid these without availing itself of the opportunity of returning any old parts for inspection and credit. Not having complied with the conditions of the contract in this respect, it was not entitled to any credit for these parts, and the court properly excluded this item of set-off. From December 23, 1914, to April 14, 1915, plaintiff furnished additional parts at the request of the defendant. These items amounted to $1,108.39, and these form the subject-matter of plaintiff's demand. The defendant brings in a counterclaim alleging that the motor was defective in material and workmanship and that his damages amount to more than plaintiff's claim. The result of the trial was that the jury returned a verdict in favor of the defendant for the excess of his demand over plaintiff's claim.

The machine with one interruption ran satisfactorily for three months and the price of it was then paid. During the first year reckoning from the date the first coal was hauled, there was a loss in time of fifty-nine hours, or a little more than an hour per week, as shown by defendant's memorandum. A number of parts had to be replaced, but as stated before defendant made no claim for them and did not return any of the parts for inspection. After the first year there were frequent losses of

time and numerous parts ordered which were delivered. The court held that as the locomotive failed to do its work, this, without proof as to what the cause of the failure was, threw upon the plaintiff the burden of proving that the motor was all right both as to material and construction. We cannot agree with this. We must conclude that the provisions of the contract were inserted as a guide for the future conduct of the parties. When the motor which was specifically contracted for was furnished and accepted and used for two and one-half years, the assumption is that the plaintiff performed its part of the contract. The defendant under the express provisions in the agreement, was authorized to return the machine if it did not develop the drawing power promised, and the money paid was to be refunded. The contract contemplated that the defective parts returned in one year were to be supplied without cost by the plaintiff. The guarantee of freedom from defects must be read in connection with the other provisions of the contract. If the defendant at this late day wishes to defeat plaintiff's claim, it should show that the motor did not perform its work and that it was defective in construction or material at the time it was furnished and that such inherent defects could not be supplied. The evidence should show in what particulars the machine was defective. General statements to this effect are the mere opinion of witnesses. The facts should appear. The jury must be able to ascertain what the defects were, and whether they existed when the machine was furnished. It must be remembered that this suit is not to recover for the price of the machine, but for parts furnished which had to be renewed.

The judgment is reversed and a venire facias de novo awarded.